IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                            Case No. 15-1206-JWB-JPO

DEFENDANT NO. 1:
REAL PROPERTY KNOWN AS 12516
WEST 164TH STREET, OVERLAND PARK,
KANSAS;

DEFENDANT NO. 2:
REAL PROPERTY KNOWN AS 3612
WYATT LANE, TEXARKANA, TEXAS;

DEFENDANT NO. 3:
REAL PROPERTY KNOWN AS 1
WINDMERE, TEXARKANA, TEXAS,
($119,976.91 Substituted);
*et al.*,[1]

        Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on Plaintiff's motion to lift the stay and for an order of sale of Defendant No. 1 (Doc. 68) and motion to lift the stay as to Defendant Nos. 2 and 3 and for an order of sale of Defendant No. 2. (Doc. 69.) The motions are fully briefed and are ripe for review. (Docs. 70, 71, 72, 73.) For the reasons stated herein, Plaintiff's motions are GRANTED to the extent they seek to lift the stay previously imposed but DENIED WITHOUT PREJUDICE to the extent they seek orders for interlocutory sale of Defendant Nos. 1 and 2.

**I. Background**

---

[1] Claims against three additional Defendants named in the complaint have been resolved.

Plaintiff brought this action in 2015 seeking forfeiture of the Defendant properties based on allegations that the properties were purchased with proceeds of wire fraud, conspiracy, and money laundering.  (Doc. 7 at 3.)  In a related criminal case, an individual named Nagy Shehata (hereinafter "Shehata") was charged by superseding indictment with wire fraud and money laundering, and his co-defendant Laura Lee Sorsby (also known as Laura Lee Sorsby Dorenbach; hereinafter referred to as "Sorsby") was charged with conspiracy to commit wire fraud and wire fraud.  *See United States v. Shehata,* No. 15-20052-JWB (D. Kan.) (Doc. 18.)  In essence, the indictment alleged that Shehata and Sorsby made false representations that induced an individual in Turkey to wire over $8 million to them for investment in a real estate project, but Shehata and Sorsby diverted the money for their own purposes. (No. 15-20052, Doc. 18 at 7.)

In the instant case, a declaration attached to the Amended Complaint alleged that Shehata and his wife, Valerie Shehata (hereinafter "Valerie"), signed a contract on December 17, 2010 to buy Defendant No. 1, and that Shehata shortly thereafter used $651,397.46 in funds from the victim to pay for the house.  (Doc. 7 at 10-11.)  A deed allegedly shows the house is owned by Shehata and Valerie with no mortgage on it.  (*Id.* at 11.)

The declaration further alleges that Defendant No. 2 was purchased on February 18, 2011 with a check in the amount of $220,063.12 drawn on a Fellows and Dunbar Law Office account and remitted by attorney Keith Butch Dunbar.  In November 2010, the victim allegedly forwarded over $2.6 million to Dunbar's client escrow account as part of the fraudulent scheme.  Defendant No. 2 is allegedly titled to Sorsby, and Sorsby also paid taxes on the property with a check in the amount of $6,071.97, using funds from the victim.  (*Id.* at 11-12.)

Valerie filed a claim to Defendant No. 1 in March 2016, alleging that she is a co-owner of the property and that the property is her primary residence. (Doc. 12.) In April 2016, Sorsby filed claims to Defendant Nos. 2 and 3. (Doc. 21.)

In April 2016, the court granted an unopposed motion to stay the case pending the outcome of the related criminal case. (Docs. 23, 24.) The stay has essentially remained in place since then. Meanwhile, in the criminal case, Shehata entered a plea of guilty in June 2018 to one count of conspiracy to commit wire fraud. (No. 15-20052, Doc. 63.) As part of his plea, Shehata admitted that he used the victim's money for his own purposes, including spending approximately $855,388.27 to buy a house. (*Id.* at 2.) In October 2018, Sorsby entered a plea of guilty to one count of misprision of a felony. (*Id.*, Doc. 128.) As part of her plea, Sorsby admitted that she "used some of the money received from the Victim to … buy the following property: … Real Property known as 3612 Wyatt Lane, Texarkana, TX; Real Property known as 1 Windmere Drive, Texarkana, TX…." (*Id.* at 2.)

Sorsby was sentenced, based on a plea agreement under Fed. R. Crim P. 11(c)(1)(C), to 24 months imprisonment, one year of supervised release, and payment of $8,362,200 in restitution jointly and severally with Shehata. (*Id.*, Doc. 155.) Shehata was sentenced in September 2019 to 32 months imprisonment, two years of supervised release, and $8,362,200 in restitution. (*Id.*, Doc. 160.[2]) In July 2020, Sorsby filed a motion to vacate her sentence under 28 U.S.C. § 2255, alleging ineffective assistance of counsel. (*Id.*, Doc. 180.) That motion was denied by the district court in December 2020 (*Id.*, Doc. 216), and the Tenth Circuit dismissed an appeal of the ruling on October 21, 2021.

---

[2] In August 2020, Shehata's sentence was reduced to time-served pursuant to a motion for compassionate release. (*Id.*, Doc. 190.)

Plaintiff moves to lift the stay as to Defendant No. 1 and seeks an order for interlocutory sale of the property. It cites a declaration stating that property taxes on the house have not been paid since 2014, that taxes totaling $87,305.95 are owed, and that taxes will continue accruing at over $10,000 per year. (Doc. 68 at 3.) It asserts that taxes will reduce the available restitution for the victim and seeks interlocutory sale "to allow for the payment of outstanding property taxes and preventing further depreciation of the property's value." (*Id.*) In response, Valerie does not oppose lifting the stay, but opposes an interlocutory sale, arguing a sale would irreparably harm her by depriving her of her home during a pandemic, at a time when she is on a fixed income and has significant health issues. (Doc. 70 at 1.) She concedes taxes are owing on the property, although she cites evidence that property taxes were paid in 2015 in the amount of $10,390.60. (Doc. 70-1 at 1.)

Plaintiff similarly moves to lift the stay[3] as to Defendants 2 and 3 and seeks an order for interlocutory sale of Defendant No. 2. (Doc. 69 at 2.) In response, Sorsby cites evidence that delinquent taxes on the property through tax year 2019 have now been paid. (Doc. 71-1.) Sorsby alleges that although she is 68 years old and is "struggling financially," she is only "slightly behind" on more recent taxes, that there are no tax liens on the property, and that she has been paying the taxes "with her limited income." (Doc. 71 at 4.) She further alleges that she resides in the home, "is maintaining the property," and has nowhere else to live. (*Id.*)

**II. Legal Standards**

Pursuant to Rule G(7)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, upon motion by a party, the court may order all or part of the property

---

[3] In its reply, Plaintiff withdrew its request to lift the stay of discovery "until the resolution of [Sorsby's] parallel criminal matter." (Doc. 73 at 2.) Subsequent to the filing of this brief, the Tenth Circuit dismissed Sorsby's § 2255 appeal.

4

sold if: (A) the property is perishable or at risk of deterioration; (B) the expense of keeping the property is excessive or is disproportionate to its fair market value; (C) the property is subject to taxes on which the owner is in default; or (D) the court finds other good cause. *See United States v. Defendant No. 1*, No. 16-1116-JWB-KGG, 2019 WL 1255278, at *2 (D. Kan. Mar. 19, 2019), *appeal dismissed sub nom. United States v. Real Prop. known as 6544 Sni-a-Bar-Rd., Kansas City, Missouri*, No. 19-3101, 2020 WL 6554841 (10th Cir. Mar. 3, 2020) (citing *United States v. Gray*, No. CR-16-123-R, 2017 WL 2544136, at *5 (W.D. Okla. June 12, 2017) (quoting Fed. R. Civ. P. Supp. G(7)(b)(i)(A)-(D))).

### III. Analysis

The court grants Plaintiff's motion to lift the stay as to Defendant Nos. 1, 2, and 3. Section 981(g)(2) of Title 18 of the United States Code provides in part that the court shall stay a civil forfeiture proceeding with respect to a claimant who is subject to a related criminal investigation or case if, among other things, continuing the forfeiture proceeding "will burden the right of the claimant against self-incrimination in the related [criminal] investigation or case." Sorsby's criminal judgment is now final (as is Shehata's) and her § 2255 motion seeking relief from the sentence and conviction has been denied by the district court and dismissed by the Tenth Circuit. Under the circumstances, continuing the forfeiture proceeding will not burden Sorsby's Fifth Amendment privilege. *See Mitchell v. United States*, 526 U.S. 314, 326 (1999) ("[A]s a general rule, ... where there can be no further incrimination, there is no basis for the assertion of the privilege. We conclude that principle applies to cases in which the sentence has been fixed and the judgment of conviction has become final.") (citation omitted.)

Plaintiff's motions for interlocutory sale of Defendants 1 and 2 will be denied at this time. Plaintiff relies on Rule G(7)(b)(i), which provides in part that the court may order an interlocutory

sale if "the property is subject to a mortgage or to taxes on which the owner is in default." This authority "is narrowly confined to mortgages and tax liens" and the court "must carefully weigh the competing interests in each case." Fed. R. Civ. P. Supp. R. G(7) advisory comm. notes. After weighing the interests shown by the briefs, the court denies the motions for interlocutory sale. In the case of Defendant No. 1, Valerie does not dispute there are substantial taxes owing on the property, although she disputes the amount. She also disputes whether there are any tax liens on the property. (Doc. 70 at 3.) Plaintiff's reply brief does not address either issue. (Doc. 72.) Plaintiff does argue it is likely to prevail on the merits of the forfeiture claim. (*Id.* at 1-2.) But the merits are not before the court in the instant motions. If, as Plaintiff argues, Valerie's ownership claim is without merit, Plaintiff can seek summary judgment or a prompt trial on the merits to determine that issue. Although the fact of substantial outstanding taxes does weigh to some degree in favor of a sale, Plaintiff fails to support its assertion that "[t]he restitution value of Defendant No. 1 declines daily." (Doc. 68 at 3.) The restitution value of the property might well be increasing in value given current real estate trends. When weighed with assertions that Valerie had no known involvement in the alleged fraud, she has continued to reside in the residence, she suffers from significant health issues (including scheduled surgeries in the near future), and she receives a modest pension and disability benefits, the court is not persuaded that an interlocutory sale of the property at this time is warranted.

As for Defendant No. 2, Sorsby cites evidence that in 2019 she paid over $28,000 in delinquent and current taxes on the property. (Doc. 71-2.) She asserts that she resides at the property, is maintaining it, and that it is "not subject to any tax liens." (Doc. 71 at 4.) Sorsby also challenges as conclusory and unsupported Plaintiff's assertion that the value of the property "declines daily." (*Id.* at 5.) In response, Plaintiff notes it is undisputed that there are taxes owing

6

on the property and argues that "only sale of the house now will prevent the continued wasting of the victim's probable future restitution." (Doc. 73 at 2.) As indicated above, however, Plaintiff has failed to support its allegation of waste, as the property may be increasing in value to a degree to offset any likely diminution through unpaid future taxes. It is Plaintiff's burden to show the need for an interlocutory sale. *See United States v. One 2014 Rolls Royce Phantom Automobile*, 461 F. Supp. 3d 1, 2 (D. D.C. 2018) ("The burden of proof lies with the moving party.") The court is not satisfied that burden has been met.

With the related criminal case now resolved, the court anticipates this matter can be resolved expeditiously and thereby avoid any waste or diminution in the value of the properties. The court denies the motions for interlocutory sale without prejudice, meaning Plaintiff is free to reassert the motions upon a proper showing that circumstances justify an interlocutory sale.

### IV. Conclusion

Plaintiff's motion to lift stay and for an order of sale (Docs. 68, 69) are GRANTED IN PART AND DENIED IN PART. The motions are GRANTED to the extent they seek to lift the stay as to Defendant Nos. 1, 2, and 3. The motions are DENIED WITHOUT PREJUDICE to the extent they seek orders for interlocutory sale of Defendant Nos. 1 and 2. IT IS SO ORDERED this 27th day of October, 2021.

_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE